1  Robert S. Green (SBN 136183)
   Elizabeth C. Guarnieri (SBN 208733)
2  **GREEN WELLING LLP**
   595 Market Street, Suite 2750
3  San Francisco, CA 94105
   Telephone: (415) 477-6700
4  Facsimile: (415) 477-6710
   E-mail Address: cand.uscourts@classcounsel.com
5
   Eric L. Zagar
6  Trevan Borum
   **SCHIFFRIN & BARROWAY LLP**
7  280 King of Prussia Road
   Radnor, PA 19087
8  Telephone: (610) 667-7706
   Facsimile: (610) 667-7056
9  Email Address: tborum@sbclasslaw.com

10 *Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY W. HILL, Derivatively on Behalf of Nominal Defendant JUNIPER NETWORKS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MARCEL GANI, STEVEN HALEY, WILLIAM R. HEARST III, SCOTT KRIENS, STRATTON SCLAVOS, PRADEEP SINDHU, WILLIAM R. STENSRUD, AND PETER WEXLER, <br><br> Defendants, <br><br> and <br><br> JUNIPER NETWORKS, INC., <br><br> Nominal Defendant. | Case No.: C 06 3396 <br><br> **SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br><br> **JURY TRIAL DEMANDED** |

SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1. This is a shareholder's derivative action brought for the benefit of nominal defendant Juniper Networks, Inc. ("Juniper" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2. In gross breach of their fiduciary duties as officers and/or directors of Juniper, the Individual Defendants (as defined herein) colluded with one another to:

   a. improperly backdate grants of Juniper stock options to Juniper Chief Executive Officer Scott Kriens and several other Juniper executives, in violation of the Company's shareholder-approved stock option plans;

   b. improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

   c. improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

   d. produce and disseminate to Juniper shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3. As a result of the Individual Defendants' egregious misconduct, Juniper has sustained millions of dollars in damages, and Kriens and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to

SHAREHOLDER DERIVATIVE COMPLAINT 1

28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5. Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6. Plaintiff Timothy W. Hill, a citizen of the State of Massachusetts, is, and was at all relevant times, a shareholder of nominal defendant Juniper.

7. Nominal defendant Juniper is a Delaware corporation with its principal executive offices located at 1194 North Matilda Avenue, Sunnyvale, California 94089. According to its public filings, Juniper is a leading provider of purpose-built Internet infrastructure solutions that meet the scalability, performance, density and compatibility requirements of rapidly evolving, optically-enabled Internet Protocol (IP) networks.

8. Defendant Scott Kriens ("Kriens") served as the Chairman of the Board and as President and Chief Executive Officer of the Company at all times relevant hereto. Upon information and belief, Kriens is a citizen of the State of California.

9. Defendant Pradeep Sindhu ("Sindu"), a co-founder of Juniper, served as Vice Chairman of the Board and as Chief Technical Officer of Juniper at all times relevant hereto. Upon information and belief, Sindu is a citizen of the State of California.

10. Defendant Marcel Gani ("Gani") served as Chief Financial Officer of Juniper at all times relevant hereto. Upon information and belief, Gani is a citizen of the State of California.

11. Defendant Steven Haley ("Haley") served as Juniper's Vice President of Worldwide Sales and Service at all times relevant hereto. Upon information and belief, Haley is a citizen of the State of California.

1    12.    Defendant Peter Wexler ("Wexler") served as Juniper's Vice President of
2  Engineering at all times relevant hereto. Upon information and belief, Wexler is a citizen of
3  the State of California.

4    13.    Collectively, defendants Kriens, Sindhu, Gani, Haley, and Wexler are referred
5  to herein as the "Officer Defendants."

6    14.    Defendant William R. Hearst III ("Hearst") has served as a director of Juniper
7  and as a member of the Audit Committee of the Board (the "Audit Committee") at all relevant
8  times hereto. Upon information and belief, Hearst is a citizen of the State of California.

9    15.    Defendant Stratton Sclavos ("Sclavos") has served as a director of Juniper since
10 2000. Sclavos served as a member of the Audit Committee from 2000 to 2003. Upon
11 information and belief, Sclavos is a citizen of the State of California.

12   16.    Defendant William R. Stensrud ("Stensrud") has served as a director of Juniper
13 and a member of the Compensation Committee of the Board (the "Compensation Committee")
14 at all relevant times hereto. Upon information and belief, Stensrud is a citizen of the State of
15 California.

16   17.    Collectively, defendants Hearst, Slcavos, and Stensrud are referred to herein as
17 the "Committee Defendants."

18   18.    Collectively, the Officer Defendants and Committee Defendants are referred to
19 herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

21   19.    By reason of their positions as officers and/or directors of the Company and
22 because of their ability to control the business and corporate affairs of the Company, the
23 Individual Defendants owed the Company and its shareholders the fiduciary obligations of
24 good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to
25 control and manage the Company in a fair, just, honest, and equitable manner. The Individual
26 Defendants were and are required to act in furtherance of the best interests of the Company and
27 its shareholders so as to benefit all shareholders equally and not in furtherance of their personal
28 interest or benefit. Each director and officer of the Company owes to the Company and its

SHAREHOLDER DERIVATIVE COMPLAINT                                                     3

shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

21. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

    a. exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b. exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

    c. exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

    d. exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

    e. refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

22. The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

SHAREHOLDER DERIVATIVE COMPLAINT 4

(1) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a) transactions are executed in accordance with management's general or specific authorization;

(b) transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

23. Juniper's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

a. Overseeing the internal audit function and reviewing, on a continuing basis, the adequacy of the Company's system of internal controls, including meeting periodically with the Company's management and the independent auditors to review the adequacy of such controls and to review before release the disclosure regarding such system of internal controls required under SEC rules to be contained in the Company's periodic filings and the attestations or reports by the independent auditors relating to such disclosure; and

b. Reviewing, approving and monitoring the Company's Worldwide Code of Business Conduct and Ethics.

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

24. At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for the Officer Defendants and administered the Company's stock option plans.

25. In 1999 and 2000, the Compensation Committee granted certain Juniper stock options to the Officer Defendants, as follows:[1]

---

[1] Exercise prices and numbers of options are not adjusted for the Company's 3-for-1 stock split effective January 18, 2000 and its 2-for-1 stock split effective June 16, 2000.

SHAREHOLDER DERIVATIVE COMPLAINT 5

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---|---|---|---|
| Kriens | 10/4/99 | $60.71 | 900,000 |
| | 12/21/00 | $93.9375 | 400,000 |
| Sindhu | 10/4/99 | $60.71 | 540,000 |
| | 12/21/00 | $93.9375 | 100,000 |
| Gani | 10/4/99 | $60.71 | 240,000 |
| | 10/28/97 | $93.9375 | 100,000 |
| Haley | 10/4/99 | $60.71 | 315,000 |
| | 12/21/00 | $93.9375 | 100,000 |
| Wexler | 10/4/99 | $60.71 | 240,000 |
| | 12/21/00 | $93.9375 | 100,000 |

26. Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing price of Juniper stock on the date of grant.

27. Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

28. Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

29. All of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Juniper's stock price, as demonstrated in the following chart:

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 10/4/99 | $60.71 | $61.00 | $74.25 | 22.3% |
| 12/21/00 | $93.9375 | $148.875 | $115.484 | 22.9% |

30. The reason for the pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Juniper stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

### Dissemination of False Financial Statements

31. As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

  a. violated the terms of the Company's shareholder-approved stock option plans;

  b. violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

  c. violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

  d. produced and disseminated to Juniper shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

32. The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

    a. Form 10-K for fiscal year ended December 31, 1999, filed with the SEC on March 29, 2000 and signed by defendants Kriens, Sindhu, Gani, Hearst, and Stensrud;

    b. Form 10-K for fiscal year ended December 31, 2000, filed with the SEC on March 27, 2001 and signed by defendants Kriens, Sindhu, Gani, Hearst, Sclavos and Stensrud.

33. Furthermore, from 1999 to 2005, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

    a. disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

    b. filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to Officer Defendants.

34. On May 19, 2006, *TheStreet.com* published an article under the headline "Option Talk Hits Juniper, F5" that described the stock option backdating practices by Juniper:

> Analysts sorting through public filings found that option grants at Juniper and F5 were repeatedly priced over seven years at the stocks' monthly lows. To market watchers, these patterns suggest that the options could have been timed or backdated to maximize their value to company executives.
>
> Wall Street, already jittery over inflation news, has shown little sympathy for companies that have come under scrutiny in a growing options-backdating scandal.
>
> Shares of Juniper fell 4% Thursday and F5 has slid 12% in the past three days on worries that these stock-option grants will invite investigations and costly legal battles.
>
> The notion that fat cat executives could be lapping up even more cream from the stock-option bowl through questionable moves emerged earlier this year.
>
> On March 18, The Wall Street Journal reported that the Securities and Exchange Commission was examining about a dozen companies for possible options backdating. In the story, the paper pointed to executives including Bill McGuire, CEO of UnitedHealth (UNH:NYSE - news - research - Cramer's Take), and Jeff

Rich, CEO of Affiliated Computer Services (ACS:NYSE - news - research - Cramer's Take), who appear to have benefited from a pattern of grant timings.

Shares of UnitedHealth and Affiliated Computer are both down 18% since the story broke. UnitedHealth received a subpoena Wednesday from the U.S. attorney for the Southern District of New York requesting stock-option documents dating back to 1999.

Juniper and F5 were pulled into the options-timing spotlight this week after analysts flagged patterns of questionable grant dates. Accounting muckrakers at Center for Financial Research and Analysis identified 17 companies that may have to explain some troublesome option datings.

And JPMorgan analyst Ehud Gelblum released a report Thursday reviewing executive-option grants for 14 companies dating back to 1998. Three of the companies -- Motorola (MOT:NYSE - news - research - Cramer's Take), Juniper and F5 -- show a suspicious pattern of grants at their stock's low for a given month. Gelblum says Motorola doesn't seem to indicate a high possibility for manipulation, since it issued grants on the first Monday of May for three of the four years that happened to be the stock's low. But Juniper and F5 may have a harder time explaining their practices.

At networking switch maker F5, six out of the 10 options granted to executives since 1998 were dated when the stock was at its lowest level in a month. F5 representatives didn't return calls or an email seeking comment.

Six out of 15 grants to executives at Internet gearmaker Juniper occurred on exactly the lowest day for the stock in each given month, says Gelblum, who declined to offer an opinion on the transactions.

A Juniper representative said it was too early to comment. "We need to go back to figure out why those grants were given on a particular day, and we are in the process of doing that," the rep said.

Observers say ideally, option granting dates should be arbitrary and have no consistent relationship to the highs and lows of the stock price. Or better yet, grants could be dated at the same time each year to avoid any impression of favorable timing.

Executives and compensation committees that arrange for the option to have the best date effectively add millions of dollars of value of the stock should the price go up. It's an unfair advantage, say investors.

"If these dudes were timing, that is simply wrong and immoral," says one New York money manager. "If their board of directors let them -- then that is simply ridiculous and a major breach of fiduciary duty."

# THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

35. The Officer Defendants breached their fiduciary duties by:

   a. colluding with the Committee Defendants to backdate stock option grants;

   b. colluding with the Committee Defendants to violate GAAP and Section 162(m);

   c. colluding with the Committee Defendants to produce and disseminate to Juniper shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

   d. colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

36. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

37. The Committee Defendants breached their fiduciary duties by:

   a. colluding with the Officer Defendants to backdate stock option grants;

   b. colluding with the Officer Defendants to violate GAAP and Section 162(m);

   c. colluding with the Officer Defendants to produce and disseminate to Juniper shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

   d. colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

38. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

39. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages,

including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

### DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

40. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

41. Plaintiff is an owner of Juniper common stock and was an owner of Juniper common stock at all times relevant hereto.

42. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

43. As a result of the facts set forth herein, plaintiff has not made any demand on the Juniper Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

44. The Board currently consists of nine directors: defendants Kriens, Sindhu, Stensrud, Sclavos, and Hearst, and directors Robert M. Calderoni, Kenneth Goldman, Frank Marshall, and Kenneth Levy. The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

    a.    Kriens and Sindhu, because they are directly interested in the improperly backdated stock option grants complained of herein;

    b.    Stensrud, Sclavos, and Hearst because as members of the Compensation Committee and/or the Audit Committee, they directly participated in and approved the misconduct alleged herein and are substantially likely to be held liable for breaching their fiduciary duties, as alleged herein. Moreover, by colluding with the Officer Defendants, as alleged herein, Stensrud, Sclavos, and Hearst have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

45. Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

SHAREHOLDER DERIVATIVE COMPLAINT     11

# COUNT I

## AGAINST THE INDIVIDUAL DEFENDANTS
## FOR BREACH OF FIDUCIARY DUTY

46. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

47. As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

48. As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

    a. colluding with the Committee Defendants to backdate stock option grants;

    b. colluding with the Committee Defendants to violate GAAP and Section 162(m);

    c. colluding with the Committee Defendants to produce and disseminate to Juniper shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d. colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

49. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

50. The Committee Defendants breached their fiduciary duties by:

    a. colluding with the Officer Defendants to backdate stock option grants;

    b. colluding with the Officer Defendants to violate GAAP and Section 162(m);

    c. colluding with the Officer Defendants to produce and disseminate to Juniper shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

  d.  colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

51. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

52. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

53. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

54. Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

55. The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Juniper common stock.

56. As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS
### FOR UNJUST ENRICHMENT

57. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

58. The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

59. To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

    A. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

    B. Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

    C. Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

    D. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

    E. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: May 24, 2006

Respectfully submitted,

**GREEN WELLING, LLP**

By: /s/ Robert S. Green
Robert S. Green

Elizabeth C. Guarnieri
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Eric L. Zagar
Trevan Borum
**SCHIFFRIN & BARROWAY, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiff*

## VERIFICATION

I, **Timothy W. Hill** hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: 5/22/06

_____
TIMOTHY W. HILL